I'm setting up our third case is number 24-11986, George Martin v. Commissioner of the Alabama Department of Corrections. Mr. Kim. Your Honors, and may it please the Court, Jason Kim on behalf of Mr. Martin. Your Honors, the judgment below was flawed for three reasons and this Court should reverse. First, Mr. Martin's counsel could not cross-examine any state witness about the state's own suppression of exculpatory evidence. Second, Mr. Martin could not present a complete defense. And third, the state failed to prove beyond a reasonable doubt that Mr. Martin acted for pecuniary gain. I'll address each of these flaws in turn. Your Honors, Mr. Martin went to trial for the crime alleged here almost 25 years after the fact. That would have been difficult for any defendant given the sheer passage of time. And yet, that difficulty was compounded for Mr. Martin by the fact that the state withheld exculpatory evidence from him for over 10 years, ensuring that no one, not even Mr. Martin, could follow up on the leads to prove his innocence. And finally, Your Honors, that difficulty was compounded yet again when the trial court prohibited Mr. Martin from telling the jury anything about the state's suppression. Mr. Martin went to trial with his hands tied behind his back and was unsurprisingly convicted. But, Your Honors, that conviction... Would the information, Mr. Kim, that he wanted to elicit on cross-examination or otherwise have been substantive evidence or merely, and I'm not denigrating the meaning of it, or impeachment evidence against those witnesses impacting on their credibility? I think it would have been both, Your Honor. Give me an example of a piece of substantive evidence that he was not allowed to cross-examine on or produce on his own related to the suppression of evidence. Yes, Your Honor. So, it could relate to the trial court's rulings, Your Honor, as to the fact that the trial court found willful suppression of evidence here and that we would have brought that in and asked the witnesses about those rulings in this instance. But why is that substantive evidence as opposed to impeachment evidence, is my question. I see, Your Honors. It would be impeachment evidence, Your Honors, and I think that asking questions about that impeachment evidence would have been, was very important to Mr. Martin's defense here. In terms of substantive evidence, I can't think of something right now, but I will add to my answer on reply, Your Honors. But in terms of, as I was saying, Your Honors, in terms of the confrontation claim, the standard is whether, you have to look at the specific line of inquiry that was prohibited and ask whether a reasonable jury might have had a significantly different impression of the state's witnesses had the questioning been allowed. That's exactly what we have here, Your Honors. State witnesses like Officer Scheer testified that they didn't home in on Mr. Martin, that they weren't biased against him and that they completed a thorough investigation looking into the leads. And consistent with that, Your Honors, the state also argued here that they didn't focus on Mr. Martin, that there was no cover-up, that good investigators had looked at the scene of the crime, Your Honors. And here, we wanted to ask questions about the state's suppression of exculpatory evidence in order to test the credibility of these good investigators. We should have been allowed to ask the officers about a key flaw in their own investigation. Why was the evidence suppressed here in the first place? What leads were lost due to the suppression itself? But we were Your Honors, the jury might have had a significantly different impression of the witnesses, but we were prevented from doing so. We were prevented from making any inquiry into this highly relevant topic going directly to the witnesses' credibility here because in the state court's view, the trial court's view, introducing evidence of the quote-unquote long procedural history of this case would have been too confusing to a jury under Alabama law. But Your Honors, state laws have to give way to a defendant's constitutional rights. And secondly, Your Honors, there was no justification for the preclusion order here. Let me ask you, the Supreme Court has said in cases like Davis v. Alaska, Van Ardsall, and Oldham v. Kentucky that while a defendant has a confrontation clause right, the trial court still retains the discretion to manage the case and exclude evidence that is confusing or irrelevant. In those Supreme Court cases, the trial court prohibited direct impeachment of an eyewitness to a crime or its victim. But here, it sounds like what you were trying to get into was more in the nature of impeaching the state through its behavior. Yes, Your Honor. And how it litigated the case across all these years. So how, based on the Supreme Court cases, would we get to the conclusion, giving Ed pedeference, that there was no reasonable basis for the state court to deny relief on this claim? Yes, Your Honor. Well, first, we think that de novo review should apply to the confrontation claim and also to the complete defense claim. We don't think that these claims were decided on the merits, but we still think that we win under Ed's... That's because, to interrupt for a second, that's because the Alabama Court of Criminal Appeals just ruled on state evidentiary grounds, but did not address Mr. Martin's constitutional claims, whatever their merit. That's exactly right, Your Honors. And the state agrees with that. They say that the state courts treated these issues as matters of pure state law. And they even went so far in the district court to object to the magistrate judge's finding that these claims had been adjudicated on the merits. But to your question, Your Honor, in terms of Edpa and those three cases, I think here, I think the basic question is, you know... So we have evidence here of witnesses who actually touched the evidence that had been suppressed. So, for example, we have Corporal Pairs with Norma Broach's identification. We have Cadet Jackson with respect to the anonymous phone calls. And so, with respect to them, I think that we could have made a more direct and substantive line of inquiry as to the impeachment. But, Your Honors, just more generally, I think that asking investigating officers about a their own investigation, I think that that is a relevant line of inquiry. And, you know, in Davis, Van Arsdell, and Olden, they not only talk about direct bias, but they also talk about the impartiality that we expect of witnesses at trial. But also, Your Honors, I guess... Mr. Martin's counsel wasn't allowed to ask about putting suppression of evidence aside, shortcomings in the investigation? It was, Your Honor. Mr. Martin's counsel was able to do that. But in terms of... When you look at cases like Van Arsdell, Olden, and Davis, it's not about the questioning that was allowed, Your Honor. It's about the questioning that was not allowed and whether that questioning might have led a reasonable jury to have a significantly different impression of the witnesses. And that's exactly what we have here, Your Honors, as I was explaining before as to Officer Scheer, for example, when he said we didn't home in on Mr. Martin. Had he been questioned about the state suppression of exculpatory evidence for over 10 years, that would have... That would have been a good attack on his credibility, Your Honors. And I think, I guess maybe stepping towards our complete defense claim, Your Honor, I think that all this also relates to our complete defense claim. Evidence of the suppression, our suppression-based theory was central to our... Was central to Mr. Martin's claim of innocence for two reasons here, Your Honors. First, the state made it that way. They didn't have evidence directly linking Mr. Martin to the scene of the crime. And so, as a result, it knew it had to rely on the quality of its investigation shown through the credibility and testimony of its witnesses to prove Mr. Martin's guilt here. And that's why it argued in the trial court, or that's why it moved to exclude evidence of its own suppression in the trial court, and that's why it also argued in closing. Again, they wanted to preserve all the evidence, no conspiracy, no cover-up, good investigators, all of that. But secondly, Your Honors, it was our core theory because the evidence itself had lost its exculpatory value when we got to the second trial. And that's because the state had held onto it for over 10 years, Your Honor. There was nothing that we could do to follow up on the leads that were generated by the evidence. And by the time of the second trial, Your Honors, the witnesses no longer remembered the evidence because the state had, again, because the Mrs. Martin, Mrs. Martin's sister no longer remembered that there was a gas can, whether her sister kept a gas can in the car. And, Your Honors, those errors themselves were not harmless. They were not harmless. An error is not harmless if it had a substantial effect on the jury, on the jury's verdict. And there are a number of different factors that this court considers, and all five of them we submit way in favor of finding that the error was not harmless here, Your Honors. The importance of the witnesses, the witnesses were very important to both sides' claims, but also to the government's case. As I explained before, no direct evidence linking Mr. Martin to the scene of the crime, so they had to of their witnesses. There was no, the questioning on the suppression would not have been cumulative because there was no questioning allowed on it. There was no cross-examination allowed on it. Very little time, so I'm going to interrupt you to ask you a question about the sufficiency issue. Yes, Your Honor. On that issue, let's start with standard of review. Assuming you exhausted the Jackson v. Virginia sufficiency argument. Yes, Your Honor. That claim is reviewed under ad pedeference, right? That's right, Your Honor. Okay. So if a jury found that Mr. Martin killed his wife, why couldn't the jury reasonably infer that he did it for the insurance money, that is, for capital gain, especially when Mr. Martin didn't disclose the existence of all insurance policies when questioned by the police? Yes. As to that piece, Your Honor, Officer Scheer testified that he didn't ask for the A, D, and D policies, but setting that aside, none of the hallmarks of an insurance payout motivated crime exist here, Your Honor. Mr. Martin didn't take out the insurance policy on his wife before she died. He didn't even collect on that A, D, and D policy that you were mentioning. And more importantly, Your Honors, after the state's case, after it put on its own case, it was the one that told the court that all it had were the mere existence of insurance policies to support the pecuniary gain element. That is what the government said itself. And so based on that, Your Honor— And why isn't that enough circumstantial evidence under AEDPA deference? Your Honors, I think that for the insurance policies at best, it would show knowledge. It doesn't show the specific intent to do this for pecuniary gain. And again, we think that the other reasons that the ACCA gave for affirming the trial court's order or the verdict here was they didn't have anything to do with the pecuniary gain element. Having marital problems doesn't mean that you're doing something for an insurance payout. And so we think that in terms of the evidence that was presented, Your Honors, it didn't specifically go to the pecuniary gain element, and no reasonable jury could find on the evidence here that Mr. Martin acted for pecuniary gain. All right. Thank you, Mr. Kim. You've saved your time for rebuttal. Great. Thank you, Your Honors. Mr. Overing. May it please the Court. Robert Overing for the State of Alabama. Martin spends much of his briefing in the argument we just heard relitigating the Brady violation arising from his 2000 trial. But he got a new trial, and now the claim is that the jury was entitled to hear about that Brady claim. But there's no constitutional right to tell the jury about a prior proceeding that warranted retrial, and it's certainly not clearly established federal law by the U.S. Supreme Court. I haven't read the trial transcript of the second trial, so I want to ask you this question about what you think it might show on this point. Did the state argue to the jury in the second trial that it was not engaged in any cover-up and didn't do anything improper and just followed leads and did old-fashioned good police work? They do pick out some quotations from a very lengthy trial where the state is responding to the theme of the defense, that this was shoddy police work, and so that was fair game. The state was not using this as a sword to kind of bolster the credibility of its witness in the absence of defense attack. And I think the best thing to look at, if you don't read the whole transcript, is actually the pretrial conference on May 18, 2019. And this is a docket entry 1632 at page 37. And this is following the defense counsel's motion for a clarification. What does the preclusion order mean? And the judge says right off the top, Martin is allowed to talk about the state's alleged inadequate and defective investigation, the failure to pursue leads, alternative theories, and alternative suspects, the alleged biased conduct in the investigation, premature and unsupported focus on the defendant, and all of this goes to impeachment. And the trial judge says, I expect you to bring that up. And then, sure enough, that's what they did at trial. From the opening to the closing, all of the cross-examination was filled with the use of prior inconsistent statements developed in Rule 32, affidavits that their investigators had collected years later, and from the original trial. And so they developed that theme, and the state was given some leeway to respond, but the state didn't say, for example, oh no, those Brady violations did not occur. You had everything at the original trial. And just to be clear, there's one Brady violation that was adjudicated and affirmed on appeal. There were other allegations of Brady violations, all stemming from primarily one officer who was in charge of discovery, rather than the prosecution team. And, you know, perhaps that led to some mismanagement and miscommunication from that officer. But in any event, bringing this up at the new trial would have created a trial within a trial, because the state did not concede all of those allegations of all the potential Brady violations that hadn't been adjudicated. That officer you were talking about, he didn't testify at the second trial, right? Correct. And so... The state didn't call him. Mr. Martin didn't call him either. Correct. And maybe they would have had a better argument if we put on the stand the officer who is accused of knowingly withholding evidence from the defense and then said, well, we've got to bring this up because it goes directly to his credibility. But just to say that we can question any member of law enforcement, and there are multiple agencies involved here, the Alabama Bureau of Investigations, the local PD, the state troopers, et cetera, that all of their credibility rises and falls with the actions or inactions of one officer is a tenuous theory. But they tried to do that, and they were able to present the essence of this defense theme. It just wasn't good enough because of the overwhelming physical evidence of guilt. So credibility of a... What was the physical evidence of guilt that you say was overwhelming? Well, so... I think it was enough to convict him, but you say overwhelming, and I'm wondering why you think that's the right characterization. Well, so the lighter found at the scene, the matchstick container found at the scene, which Martin volunteered had come from his house, the fact that it was obviously staged... But the house belonged to the two of them. Right, but the explanation for how the lighter got there... Not the lighter, the matchstick. If it belonged to the house, it belonged to the two of them, and she was driving the car, so... But why would she have matchsticks in her car? He never explained that, and the explanation was, well, maybe she picked it up when she was going to donate items to Goodwill, and that's how it got there. Along with the lighter, the car is stuffed with paper. It's stuffed with flammable material. Our expert and the investigators testified to that. And then it's staged to look like an accident. There's no significant damage to the front of the car. The engine didn't explode or something like that. There's a tremendous amount of evidence that doesn't turn on the credibility of the officers who investigated, and that's why we're able to get a conviction even 20 years later, because it wasn't dependent on the memory of any individual witness. It was dependent on what was found at the scene. There was no alternative suspect who had motive, who was developed and had access and means to commit this crime, and they're not seriously contesting his guilt for the murder here. So it's not like there was a star witness, the victim, or an eyewitness whose credibility was at stake, and then the trial judge cut that off. It was a reasonable limitation that said, look, I don't want to get into... Do you think that something is lost? I get that they were able to pursue, bring up things like failure to pursue leads, investigative defects, and so forth. Do you think that there's something lost by not being able to tell the jury that there was some intentionality behind it, and that that in itself has value in terms of the defense? I think maybe if Officer Calhoun had been on the stand, then they would have a better argument there. But just to say, in general, we want to tarnish the state and its officers and their reputations, I don't think that's warranted. But it really goes to the investigation. I get your point that, you know, that specific officer didn't testify, but they're really, these other officers are testifying about an investigation in which they all participated. And the misdeeds of one member of that investigative team reasonably could be... It could be of value to the defense to point out and say that that could have affected other aspects of the investigation. Well, and they were able to draw that out and get very close to the line when they're presenting, you know, why didn't you investigate this alternative suspect? Why didn't you interrogate him for five or six hours? And then the response was, well, actually, we did. There just wasn't anything there. We had Officer Williams surveilled. We brought him in for questioning. There just weren't any leads to develop there. But the defense did pursue that kind of attack on the completeness of the investigation and say, you know, you knew there were other suspects out there, but you didn't investigate them. Why did you believe Officer Williams, but you didn't believe Officer Martin? They accused the state of planting evidence. They accused the state of withholding evidence, of essentially destroying evidence. They say there was a gas can in the period in one of the evidence canisters that wasn't there prior. I mean, they really made these attacks. They just didn't hit home with the jury because of all the physical evidence at the scene, and there's just no story, no plausible alibi for the defendant. So, Judge Pryor, you're right to note that there's some line here. There's limited, limitations of cross-examination have to be reasonable, and here we don't think that line is crossed because the essence of the defense was able to be presented. And this is a claim that the court has to be really deferential on because it's within the discretion of the trial judge to consider in the context of the trial, will this be too prejudicial? Will it be too confusing? And the Alabama state courts upheld that. Briefly, they have argued that we somehow forfeit the merits on this. I mean, we're just defending the district judge's ruling on the merits of this claim, and I think that's fair game. We've also raised merits-based arguments in our answer and our reply to the magistrate judge's report when we said, really, these aren't federal claims. They're state law claims based in the Alabama rules of evidence. And if you go back and look at the state briefing on this, each of their briefs starts out with, Alabama law of evidence has a really liberal test for determining relevance. And then in their cert petition to the Alabama Supreme Court, it's at the very end, it's one sentence that says, this is a federal claim. And so we think, we made that argument below as an exhaustion argument, and we stand by that, but we also think it was an argument on the merits that this really wasn't ever a federal claim, and it's not now. Well, from the face of the preclusion order, the trial court clearly understood that Mr. Martin was raising a federal claim. The court said Martin had argued that he has a Sixth Amendment right to confront the state's witnesses. So, you don't dispute that, do you? No, but he's got to raise it throughout the appellate proceedings in the state at every round, every level. And I submit, perhaps, the reason that we don't have a cert petition to the United States Supreme Court was that it was pretty obvious by the time they got to the Alabama Supreme Court that this was a state law issue. And the way they teed it up, they said, this is an issue of first impression, whether the mere existence, well, on the sufficiency claim, they said, whether it was the mere existence of insurance could give rise to this capital charge. But on the confrontation, as well, it was a question of Rule 403 of the Alabama Rules of Evidence. They said that's an issue of first impression for this court. Well, if these things were foreclosed, if the state's position, that preclusion order, is foreclosed by clearly established federal law, you would expect that to be front and center, for them to be jumping up and down about that. And they don't file a cert petition because this was resolved on adequate and state law grounds about weighing prejudice versus the probative value of that evidence. Again, I know it's not the end all, but you don't dispute that Mr. Martin raised federal claims to the Alabama Court of Criminal Appeals, right? Not on sufficiency, but on confrontation, yes. He raised those, too, right? Yes, but then the cert petition is just one sentence. I get your point about the cert petition, but there's no doubt that he raised these issues as he needed to at the trial court and at the Alabama Court of Criminal Appeals, right?  And the Alabama Court of Criminal Appeals didn't address the constitutional side of the argument. Well, for AEDPA purposes, I think if he raised it, then you have to read in the rejection of it. If he put the courts on fair notice of a federal constitutional claim, then the fact that they focused their opinion, this court doesn't hold them to certain opinion writing standards. Sir, I agree with you. I mean, you can't, if you make an argument front and center, and the court doesn't even acknowledge it, I don't think it's adjudicated that issue. Well, the court's not obligated to say anything. I think that is evidence that he actually didn't raise the, he raised it as a law of evidence question. And maybe he did that because there's better state law precedent. Maybe he did it for this exact reason, so that he can come to federal court and say, this needs to be adjudicated de novo because they just didn't get my federal claim. And so it's packaged as state law claim for the state courts and federal claim for the federal courts. That's not how AEDPA is supposed to work. It's adjudicated on the merits if it was rejected. If he did raise it in the cert petition and they didn't grant cert, then it was rejected on the merits at the Alabama Supreme Court level as well. I didn't have a lot of time on sufficiency. This is a very deferential standard of review. It's not just the insurance policy, but it's the fact that the scene was staged. There is no structural damage to the car. Martin's insisting that it was an accident. And then he has this large insurance policy that pays out only in the event of an accident. He had also handled a very similar accident the year prior in his capacity as a trooper and investigator. And so those, the fact that he staged it to look like an accident supports the theory that he was trying to collect on this policy that would pay out in the event of an accident. A jury could certainly draw that conclusion. They take one line out of context from the transcript where the prosecution is saying, this is our only evidence. But they were referring to a particular insurance policy that we didn't have a witness testify about, but we had other witnesses testify to the general theory that Martin staged the accident for the insurance money. So I have focused mostly on the merits here, but we do stand by both our positions that these claims were not exhausted. The Jackson claim, he didn't mention any federal case law, any federal authority in the CCA brief. We didn't waive exhaustion in the court below, which requires an affirmative express waiver from the state. And it would ill fit the state's sovereignty to find that it's waiving exhaustion based on one line that perhaps could have been better worded in a brief. It also would be needlessly formal because the district judge could have just given us an opportunity to amend the answer to the petition. Do you want to waive exhaustion? And we would have said, no, that doesn't make any sense. Thank you. All right. Thank you very much.  Your Honors, so just a couple of points, Your Honors. We think that de novo review applies to the complete defense and confrontation claims. The ACCA's decision doesn't even include a mere reference to federal law or to federal cases under Johnson versus Williams. And in Romine versus Head, we think that that case also supports de novo review of Mr. Martin's confrontation and complete defense claims. His better argument, I don't know if it's a winning argument, but his better argument is that by the time you got to the Alabama Supreme Court, you had reduced the federal constitutional arguments to a line or two, and that was insufficient. Yes, Your Honors. But all we have to do is raise the claim and give the Alabama Supreme Court or any state court a fair opportunity to address them. And in our ASC petition, we did include federal law. We cited Davis versus Alaska, which is a case that we rely on here. We raised the complete defense and confrontation claims there. In terms of a lot of the arguments that they're making on the merits of our complete defense and confrontation claims, they weren't raised in the court below or in the answer itself. And so, Your Honors, we think those claims are being raised for the first time on appeal. In terms of Major Calhoun, Your Honor, we couldn't call him because of the preclusion order. Had we called Major Calhoun, and this goes to our complete defense claim and also to our confrontation claim as well, but we wanted to call Major Calhoun so that we could show the state's suppression of exculpatory evidence in this case, and that would also show the state's biased consciousness of a weak case. But we couldn't do that here because of the preclusion order. We wouldn't be able to cross-examine him based on his own suppression, which was all judicially found by the trial courts. My friend here also says that there was only one Brady violation that warranted the new trial here. There were a number of Brady violations that the trial court found. None of those findings have been overturned by the ACCA or the ASC. In terms of examples, Your Honor, of cases that you could use to kind of find in our favor, I think Alvarez v. Urkel, which is a case that we cite in our opening and reply brief in this court is a good example. It's a Second Circuit decision applying Van Orstal to find a confrontation violation, and there the defense was prohibited from cross-examining the lead investigator about what other officers had done in this case about the NYPD's failure to investigate certain leads, again, to show the state's bias, to show its consciousness of a weak case. And there the court found a confrontation violation even where there was no Brady violation. There were Brady allegations, but there was no Brady violation. But here, Your Honors, our case is better than that. We have a Brady violation or multiple Brady violations, and that case was decided under ANPA. We think we should get an over-review. And I think I'm out of time. If the court doesn't have any further questions, we ask that the district court be reversed. All right. Thank you both very much. Thank you.